### JOHN DUNNELL *vs.* GEORGE W. FISKE.

D , who had worked for F. in making pill boxes by a machine owned and kept secret by F., left F. and set up a machine for making similar boxes on his own account: F., when speaking of D.'s said machine, said, "D. stole my patterns to get up his castings by." *Held*, that it was for the jury, and not for the court, to decide whether F. intended, by these words, to charge D. with the crime of larceny.

TRESPASS UPON THE CASE for slanderous words. The first count in the declaration alleged that the defendant said of the plaintiff, "he has stolen my box patterns." The second count alleged that the defendant said, "Dunnell stole my patterns, and got up his castings, and then went into the box business." The third count alleged that the defendant charged the plaintiff with the crime of stealing.

The defendant pleaded the general issue, and filed a specification of defence, as follows: "That whatever words were spoken, they were not spoken maliciously, nor with intent to charge the plaintiff with larceny, but were spoken of and concerning a certain box machine of the defendant, some part of which, or patterns of which, the plaintiff had taken from the defendant's shop, and procured imitation to be made of said machine, for the benefit of himself; and that the words spoken in relation to such transaction were true : That the plaintiff and defendant are machinists, and that the defendant is a bobbin maker ; that the plaintiff had been employed in the defendant's shop, and afterwards commenced work on his own account ; that the defendant had a machine for making pill boxes, and that the plaintiff made one, which he averred to be an improvement upon the defendant's."

At the trial before *Hubbard*, J. the plaintiff, to maintain his action, called a witness, who testified that he worked for the defendant, in the business of making bobbins, shuttles and boxes; that he worked near the defendant's box machine, which was kept under lock; that in June 1844, one Willey came into the defendant's shop and tried to get into the box room but could not get in ; that the defendant afterwards

came in, and the witness told him that Willey had tried to get into the room, and had said that the defendant need not be so afraid of his box machine, for Dunnell had one that would cut two boxes to his one ; that the defendant replied, that it was strange they could crack up that machine so ; that he (the defendant) had one just like it, and then said, "Dunnell stole my patterns to get his castings by."

The plaintiff called another witness, who testified that he also worked for the defendant ; that his chief business was turning boxes ; that the plaintiff worked in the defendant's shop about two years ; that when the plaintiff left the defendant's employ, the defendant, on being asked if there were any other machines like his, said there was none except Dunnell's, and then said, " he stole my patterns to get castings by ; " that the witness asked the defendant what he (the witness) should understand by his saying that Dunnell stole his patterns, and the defendant replied that he wished the witness to understand " patterns to get up castings."

The judge being of opinion that the words testified to by the witnesses would not sustain the plaintiff's action, the plaintiff submitted to a nonsuit, which was entered, subject to the opinion of the whole court.

*B. F. Butler,* for the plaintiff.

*Wentworth,* for the defendant.

SHAW, C. J. The old rule of the common law is well established, that to maintain an action upon the case for slanderous words spoken, without the averment and proof of special damage, the plaintiff must prove that the defendant uttered language, the effect of which was, to charge him with some crime or offence punishable by law. This might be done by the mere force and effect of the words used ; or words might be used in a conventional, ironical, figurative or artificial sense, not *proprio vigore* importing a charge of crime, but having that effect, by reason of some well understood local or technical usage, or by reason of the existence of some extraneous fact, to which the speaker alludes. In the most common mode of declaring, which heretofore prevailed, the

practice was to set forth the words exactly, and then aver the particular usage, or the extraneous facts, giving to the words their slanderous effect and import, and to allege that the words were spoken with reference to such fact or usage; and thus these facts were put in issue, to be traversed and tried, if denied. Whether the words are of themselves actionable, when they directly impute a crime, or when, by aid of the averments, colloquia, and inuendoes, if proved, they have that effect, is a question of law, because the construction, meaning, force and effect of language, written or spoken, is matter of law. The law must necessarily take cognizance of the rules and usages of language. On the trial of such an issue, the course would be, to leave to the jury, on the evidence, the questions of fact, whether averments of extraneous fact, or usages, the colloquia and inuendoes, are true, and for the court to direct the jury whether, if found true, and if found that the words spoken were used with reference to them, the words are actionable.

But it has been decided, in several recent cases, that it is admissible to insert a declaration, averring that the defendant did charge the plaintiff with the crime specified, as it is done in the present case; alleging that the defendant charged the plaintiff with the crime of larceny; and such is now the general practice in this State. *Whiting* v. *Smith*, 13 Pick. 364. *Pond* v. *Hartwell*, 17 Pick. 269. *Allen* v. *Perkins*, 17 Pick. 369. Under this practice, the issue is different, and therefore, to some extent, the mode of trial must be different. The fact in issue is, not whether the defendant spoke certain words about the plaintiff, but whether, in any words, construed by themselves, or construed in reference to peculiar usages or extraneous facts, the defendant did or did not impute to the plaintiff the crime of larceny. This opens the matter to proof on both sides, not only of the words spoken, but of the manner of speaking, and of all the extraneous facts and circumstances bearing upon the question, whether the language used did impute the crime alleged. If either party apprehends surprise, by the offer of proof of facts which he

cannot anticipate, he may guard himself, by asking for a specification or bill of particulars. The court will then leave it to the jury, upon the evidence, to find the facts proved or otherwise, which are supposed to qualify the sense of the words used, and instruct them in matter of law, as to the meaning and construction of the words modified or otherwise by such facts.

In the present case, the third count charges the defendant with having, in spoken language, imputed to the plaintiff the crime of stealing. It appears that the plaintiff had a machine for making boxes, whether patented or not does not appear, but one that he chose to keep closed and screened from observation, that he might retain the benefit of the invention to himself exclusively; that the plaintiff had been in his employment, in mechanical business; that after the plaintiff left the defendant, he constructed and set up a rival machine for making similar boxes; and that the defendant said of the plaintiff, at different times, "he stole my patterns to get up his castings by," for his own machine.

The natural and most obvious import of the word "steal" is that of felonious taking of property, or larceny. But it may be qualified by the context. As if one says of another, "he stole the apples from my trees;" it imputes a trespass, and not a felony, and the words are not actionable. But if he says, "he stole the apples from my cellar," it imputes a felonious taking, and the words are actionable.

But the words may be equivocal, and the question, whether they impute a felonious taking or not, may depend upon the facts and circumstances under which they were spoken, and the facts and circumstances referred to by the speaker, and understood by the hearers; and this, we think, is the present case.

The defendant may have intended to assert, that the plaintiff had improperly availed himself of the knowledge of the defendant's machine, and the parts and members of which it was composed, as patterns to prepare similar members of his own machine; or, to use a familiar phrase, had *pirated* his

Dunnell v. Fiske.

invention. This the plaintiff might have done, by carrying away, in his memory, a prototype of the forms and proportions of the defendant's machine, or by drawings, descriptions or models made by himself of his own materials. But as an invention, a bright thought, or brilliant discovery in mechanics, although valuable and sometimes profitable, cannot be the subject of theft, and cannot be said, except by a rhetorical figure, to be stolen, such imputation would not be an imputation of larceny, and not actionable.

But the word "patterns" properly enough describes material forms, used for moulding and making castings. Such patterns are chattels, the subject of larceny; and charging the plaintiff with stealing *his* patterns, using the word "patterns" in this sense, would be an imputation of larceny, punishable by law, and would sustain the third count in the declaration. As the natural import of the words, independently of extraneous facts, was to charge the defendant with a felonious taking of these chattels, and so with larceny, it was incumbent on the defendant to prove, by such extraneous facts, that they were used in the former sense, and did not impute larceny to the plaintiff. The court are therefore of opinion, that instead of directing a nonsuit, the judge should have left the evidence to the jury, to find or not, according to the weight of the evidence, whether the words were spoken in such a connexion, or with reference to such extraneous facts, as to show that they were intended and understood to impute an unwarrantable use and appropriation to himself of the defendant's invention, and to direct them that, in that case, the proof did not support the third count; but that, if the words were used in their natural and obvious sense, not modified or restrained by such external facts and circumstances, they did impute to the plaintiff the offence of larceny and would maintain the third count in the declaration.

*Nonsuit taken off, and a new trial granted.*