[Civ. No. 3366. First Appellate District, Division Two.—May 20, 1920.]

LYNN C. BUXTON, Respondent, v. INTERNATIONAL INDEMNITY COMPANY (a Corporation), Appellant.

[1] Automobile Insurance—Construction of Letter and Policy Together.—In this action on a policy of automobile insurance, a letter from the insurance company to the assured confirming the statements of one of its solicitors as to the protection given by that company and in which it agreed to insure against certain risks was properly held to constitute a part of each and every contract of insurance entered into by the assured after the date of such letter, unless expressly excluded from said contracts, where said policies were taken out in reliance thereon, notwithstanding said policies contained provisions in conflict therewith.

1. Insurance covering automobiles against theft, robbery, and pilferage, notes, Ann. Cas. 1915A, 627; Ann. Cas. 1916A, 1128; Ann. Cas. 1917D, 53; 44 L. R. A. (N. S.) 75; 51 L. R. A. (N. S.) 584; L. R. A. 1915E, 579; L. R. A. 1917F, 543.

[2] Id.—Use of Word "Steal" in Broad Sense—Intention of Parties—Construction of Policy.—Where, from an examination of all the provisions of a policy of automobile insurance in the light of the circumstances connected with and preceding its issuance, such as the statements of the assured as to the risks he desired insurance against and the statements of the insurance company and its solicitor as to the protection given, it is apparent therefrom that the word "steal," used by the insurance company in referring to the risks it would insure against, was intended to cover every form of wrongful taking by a conditional vendee, and not merely larceny, the policy will be construed accordingly.

[3] Id.—Action on Policy—Reformation of Contract—Recovery—Pleading.—A complaint seeking to revise or reform a contract and also to recover upon or enforce the same as revised or reformed states but one cause of action.

[4] Id.—Conversion of Automobile — Allegations on Information and Belief—Sufficiency of.—An allegation, on information and belief, that the conditional vendee of an autotruck, without the knowledge and consent of the vendor, removed the truck from the county, and from the state, and ever since has and does now conceal the same with the intent to injure and defraud the vendor, and that said vendee embezzled said truck and wrongfully converted the same to his own use, constitutes a sufficient allegation of conversion, as against a general demurrer.

[5] Id.—Proof of Loss—Waiver—Pleading.—In an action on a policy of automobile insurance, the complaint is sufficient, although no proof of loss is pleaded, where plaintiff pleads facts which constitute a waiver of proof of loss and these facts are not denied by the defendant.

[6] Id.—Pleading Contract According to Legal Effect—Denial of Allegations—Issues.—Where the plaintiff, in such an action, pleads the contract of insurance according to its legal effect and such allegations are denied by the defendant, a finding of the trial court with relation to the intention of the parties to the contract in using a particular word, in defining the protection given, is within the issues made by the pleadings.

[7] Id.—Evidence—Burden of Proof.—An action to recover under a policy of automobile insurance against theft is a civil action and plaintiff is required to prove his case only by a preponderance of the evidence, the rule being the same as it is in civil cases generally.

[8] Id.—Attempt to Recover Property — Payments to Detective Agency—Recovery of.—Where a policy of automobile insurance expressly provides that any act of the assured in recovering, saving, and preserving the property in case of loss or damage shall be considered as done for the benefit of all concerned and that all reasonable expenses thus incurred shall constitute a claim under

the policy, the assured is entitled to recover the amount paid a detective agency in attempting to recover the property.

[9] ID.—EQUITY OF VENDOR—INSURANCE OF—INTEREST—JUDGMENT.— Where the interest or equity of the assured in the automobile is the amount of the unpaid installments plus interest thereon, the conditional sale contract having provided for the payment of interest on all deferred payments from the date of the contract, and the policy of insurance provides for the protection of that equity, the insurance company, in an action on such policy, may not object to the allowance of such interest in the judgment.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

N. Blackstock, Edward M. Selby and W. I. Gilbert for Appellant.

John B. Yakey and Jack M. Hendrick for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment for the plaintiff in an action to recover upon a contract of insurance. The court found that the contract of insurance entered into between the parties to this action consisted of a written agreement in the form of a letter dated June 8, 1916, signed by the secretary of the defendant company and addressed to the plaintiff, and of a policy of insurance set out in the. complaint.

Plaintiff was a dealer in automobiles and entered into a contract with one Suttle, by which Suttle was to purchase a Stearns-Knight automobile for $2,250, the purchase price to be paid in installments as provided in the contract, and the automobile to remain the property of the vendor until all payments had been made. Plaintiff applied to the defendant for insurance upon this automobile so contracted to be sold, and a policy was issued by the defendant on June 12, 1917. The insured named in the policy was "W. A. Suttle and/or N. R. Vail." According to the testimony and the findings, at the time of the issuance of the policy, the automobile covered thereby was the property of the plaintiff and said N. R. Vail had no interest whatever therein, but his name was inserted in the policy at the suggestion of the defendant's agent because plaintiff stated to said agent

of the defendant that Vail would advance money upon this purchase contract. The premium upon the policy was paid by the plaintiff and the policy was delivered to him. Vail for some reason did not advance money upon the contract and on June 26, 1916, an indorsement was made on said policy by the defendant company that it had received notice that the interest of Vail in the policy had been assigned to plaintiff, and loss, if any, was payable to W. A. Suttle and/or Lynn C. Buxton, as their interests may appear. Later the policy was assigned by plaintiff to T. E. Newlin as collateral security, and this assignment was approved by the insurance company. After the loss of the automobile, Newlin assigned his interest in said policy to plaintiff.

The testimony upon which the findings of the trial court are based shows that prior to June 8, 1916, Mr. Hallenbeck, who was soliciting business for the defendant, had a conversation with the plaintiff regarding his insurance business. Hallenbeck was seeking plaintiff's business and plaintiff complained to him about the technical defenses raised by insurance companies and the inadequate protection given by their policies, and told him that he desired to be fully protected in all cases of lease contracts. Hallenbeck promised that his company would fully protect the plaintiff if he would insure his automobiles with it, and stated, according to the plaintiff's testimony, that the policies of his company would be protection against "fire, theft, and wrongful conversion," and that he would have the company write to plaintiff to this effect. In accordance with this understanding, on June 8, 1916, H. Perk, Jr., secretary of defendant company, wrote to the plaintiff as follows: "I wish to advise you that the International Indemnity Company will from this date extend policies on all cars in which you may have an equity to cover any claims arising under the following conditions: . . . Third: If the conditional buyer of an automobile or any member of his immediate family should steal any automobile insured under our policies and thereby commit a felony, upon warrant being secured for the arrest of such party or parties, the company hereby agrees that your equity in any automobile insured by this company will be fully protected." Plaintiff's secretary testified that reliance was placed upon this letter and policies

of insurance were ordered from the defendant company with this understanding.

This instrument was never recalled, and plaintiff had received no notice at the time the policy in suit here was issued, nor thereafter, that this communication was not in full force and effect.

On or about September 15, 1917, Suttle, the vendee of the car, disappeared from Los Angeles, taking the car with him. The evidence regarding his alleged misconduct we shall discuss later. [1] Our first consideration is the contention of the appellant that the evidence does not support the finding of the trial court that the two documents mentioned here—the letter of June 8, 1916, and the policy issued June 12, 1917—constitute one contract. We think it clearly appears from the testimony of the plaintiff and his secretary that the policy was taken out in reliance upon and in consideration of the agreement made in the letter of June 8th, and that said letter became a part of each and every contract of insurance entered into between the parties after its date unless expressly excluded from said contracts. The policy of insurance itself provides, among other things, insurance against: "Theft, Robbery or Pilferage, excepting by any person or persons in the assured's household or in the assured's service or employment whether the theft, robbery or pilferage occur during the hours of such service or employment or not, *and excepting also the wrongful conversion or secretion by a* mortgagor or *vendee in possession* under mortgage, *conditional sale; or lease agreement, . . .*"

[2] It was the contention of the plaintiff upon the trial that the language hereinbefore quoted from the letter of June 8th was intended to obviate the exception italicized above with reference to wrongful conversion or secretion by vendee in possession under conditional sale; and that the language of said letter: "If the conditional buyer . . . should steal any automobile insured under our policies . . . your equity will be fully protected," was intended by the parties and understood by them to cover wrongful conversion by said conditional buyer; that the word "steal" is used in its broad, general sense, and not in the technical sense of larceny. Plaintiff asked that the portion of the contract of insurance appearing in the letter be reformed to express the true intent and understanding of the parties.

The court found that the word "steal" was used by the parties. to express the idea of wrongful conversion and reformed the contract accordingly. The matter could have been disposed of, as pointed out by respondent, under the power of the court to interpret contracts, for it appears from the testimony of the plaintiff's witnesses that the word "steal" must have been used by the parties in its broad and colloquial sense. It is unlikely that the plaintiff would have cared for an extension of insurance to cover a contingency which is almost impossible of occurrence. If appellant's view be taken, the defendant assumed practically no risk at all in guaranteeing the plaintiff against larceny by a conditional vendee of an automobile covered by his contract of purchase. The conditional vendee would have lawful possession of the car, and his misappropriation thereof would be embezzlement or wrongful conversion. It is difficult to imagine how he could commit larceny in connection therewith, for this offense involves unlawfulness in taking possession. Appellant enlightens us upon this point by arguing that if the contract of purchase was entered into for the purpose of stealing the car, then the original possession would be unlawful and the act would be larceny. It seems unlikely that the plaintiff desired insurance against a situation such as this. The necessary elements of such an offense to bring it within the terms of such a policy would be most difficult of proof. Furthermore, the direct testimony of the plaintiff is that he desired and was assured that he would receive protection against wrongful conversion by his vendee. It is not surprising that a layman, upon reading the letter of June 8th, would think its language covered this situation. It is also not necessary that parties to a contract should express themselves in the most technical and precise terms; it is sufficient if their meaning clearly appears.

Section 3401 of the Civil Code provides that in revising a written instrument the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be. Section 504a of the Penal Code provides that every person who shall fraudulently remove, conceal, or dispose of any personal property or effects of another in his possession under a contract of purchase not yet fulfilled is guilty of

embezzlement. Although the word "steal" ordinarily imports larceny, it may be shown to import a charge of embezzlement. (*Taylor* v. *Short,* 40 Ind. 511.) The word "steal" can be shown in the connection in which it is used not to import larceny. (26 Am. & Eng. Ency. of Law, 2d ed., 770; *Dunnell* v. *Fiske,* 52 Mass. (11 Met.) 551, 554.) The term "steal" "is commonly used in indictments for larceny . . . and denotes the commission of theft. But, in popular usage, 'stealing' seems to be a wider term than larceny, inasmuch as it may include the unlawful appropriation of things which are not technically the subject of larceny." (Black's Law Dictionary.) It is said in *Darling* v. *Clement,* 69 Vt. 292, 297, [37 Atl. 779], that the natural and obvious meaning of the word "steal" is a felonious taking of property by larceny, but it may be qualified by accompanying words so as to show that such was not the meaning. In the present case, we think that when the word "steal" was accompanied by the qualifying words, "by a conditional buyer," that these qualifying words clearly extended the word "steal" so as to make it include embezzlement, a crime which is consistent with the legal right of possession in the vendee under a conditional contract of purchase.

Furthermore, if the contract contained in said letter be construed as appellant desires, merely to cover a technical theft by a conditional purchaser, or, as stated by the appellant: "Only to cover a case where there was a felonious intent at the time that the automobile purchaser acquired possession," then the owner was already protected against such a situation by the policy proper, and without the addition of the letter of June 8th, and therefore the portion of the contract contained in the letter is meaningless and useless. For the policy itself provides against theft by any and every one excepting only persons in the assured's household or employment. There is no exception made as to theft by one having a conditional contract of purchase, and if we concede the possibility of such an offense, then no exception is made of it in the policy. The only thing that is excepted with regard to the conditional purchaser is "wrongful conversion." Therefore, it appears that if the letter of June 8th added any protection against the actions of the conditional purchaser, it must have been by making inoperative this exception against wrongful conversion.

We therefore agree with the trial court in its holding that the contract was intended by the parties to cover unlawful conversion by the vendee.

It may be appropriate to point out here, in answer to certain arguments made by appellant, that the finding of the trial court is that in drawing the contract between the parties to this action, it was the intention of the parties that this contract should cover and fully protect the plaintiff against the embezzlement or wrongful conversion of any automobile covered by any insurance policy issued by the defendant, and that said letter or contract of June 8, 1916, was given by defendant company to the plaintiff for the purpose and with the intention to protect the said plaintiff against wrongful conversion or embezzlement of any automobile so sold by plaintiff under conditional sales contract. This finding is sufficient to sustain the judgment, and it is immaterial whether or not the other portion of the finding to the effect that by inadvertence and mistake the word "steal" was used instead of the words "wrongful conversion and embezzlement" is technically sustained by the evidence or not. If the parties intended that the word "steal" should be used in its broad and colloquial sense and cover certain risks out of which this loss grew, that is sufficient, and it is unnecessary that the record show the parties actually intended to use the express words, "wrongful conversion," but by mistake used the word "steal."

Many of the other objections of the appellant are technical ones, and we shall discuss them briefly. Appellant contends that its demurrer should have been sustained because the complaint contains two causes of action which were not separately stated. The court found, contrary to appellant's premise upon this argument, that the letter and contract constituted one and the same contract. As before stated, we are in accord with this conclusion. [3] A complaint seeking to revise or reform a contract and also to recover upon or enforce the same states but one cause of action. (*Messer v. Hibernia Sav. & Loan Society,* 149 Cal. 122, [84 Pac. 835].)

[4] Appellant also contends that the complaint does not sufficiently allege the conversion of the automobile by Suttle, and therefore fails to allege loss. The complaint alleges: "As this plaintiff is informed and believes, and therefore

alleges the fact to be, the said W. A. Suttle, without the knowledge or consent of this plaintiff, removed from Los Angeles, and the state of California, the said automobile and ever since has and does now conceal the same with the intent to injure and defraud this plaintiff.'' This is an allegation upon information and belief of sufficient facts to constitute embezzlement under our code. And it is further alleged in the complaint, upon information and belief, that the said Suttle ''embezzled said automobile and wrongfully converted the same to his own use.'' An allegation of material facts upon information or belief is a sufficient allegation. (Sec. 446, Code Civ. Proc.; *McDermont* v. *Anaheim etc. Water Co.,* 124 Cal. 112, 115, [56 Pac. 779].) The objection to this allegation was taken by general demurrer, and the allegations of the complaint we think are sufficient against such attack.

[5] Appellant also contends that the complaint is insufficient because no proof of loss is pleaded. Plaintiff pleaded facts which constitute a waiver of proof of loss, and these facts were not denied by the defendant. Plaintiff alleged that on September 24, 1917, he notified the defendant in writing of the loss or disappearance of the automobile and that within sixty days from the date of the loss the defendant denied liability upon the policy upon the ground that the policy did not cover embezzlement or wrongful conversion. Appellant seeks to avoid the effect of this waiver by asserting that its denial of liability was under the policy alone, and it did not have in contemplation the letter of June 8, 1916, which was held by the trial court to be a part of the policy; that, therefore, they never denied liability under the contract recovered upon here and therefore never waived proof of loss. The answer to this contention is that the defendant was aware of all the facts and is presumed to know the law. Since the court has held that the two instruments constituted one contract, defendant's denial of liability under the contract was a denial of liability under both instruments.

[6] Another objection of appellant is that the finding of the trial court with relation to the intention of the parties to the contract in using the word ''steal'' is outside of the issues made by the pleadings. This argument is made because the complaint alleged, among other things, that the de-

fendant had contracted and agreed with the plaintiff in consideration of the plaintiff purchasing insurance from the defendant to attach to each and every policy then in existence held by plaintiff or that might thereafter be issued a rider or agreement protecting the plaintiff against wrongful conversion by purchasers under conditional contracts of sale. It is true that the trial court found against this allegation of the complaint, and plaintiff did not recover upon this theory of the case. But it is not true that the complaint contained no allegations sufficient to place in issue the question of the meaning of the word "steal" as contained in the letter of June 8, 1916. Upon examination of the complaint, we find an allegation that the defendant in consideration of the payment of a certain premium executed and delivered to the plaintiff a policy of insurance against all direct loss or damage which he might sustain caused by the wrongful conversion of said automobile by the vendee under said executory contract. This is pleading the contract according to its legal effect and these allegations were denied by the defendant. In determining the legal effect of this contract which was found to be made up of the policy and letter of June 8, 1916, the court necessarily determined the meaning of the language used in the light of the intention of the parties to the contract. This portion of finding 4 was therefore in issue, and it is the basis of the judgment.

The only other objection of the appellant which we find it necessary to discuss here is that the evidence does not justify the finding that Suttle converted the automobile to his own use and removed the same from the state of California and does now retain and conceal the same with intent to injure and defraud the plaintiff. The evidence in the case shows (and there is no evidence to the contrary) that Suttle took the automobile out of this state without the consent or knowledge of the plaintiff; that he concealed the same so that the plaintiff is unable to locate it, although he employed detectives who followed Suttle about to several cities and endeavored to locate the car; that plaintiff demanded of Suttle either payment of the installments due or possession of the car, and this demand has not been complied with; that the payment due on September 15, 1917, the day when the automobile was taken from the state has

not been made, and no subsequent payment has been made, although several months elapsed between the time of its disappearance and the institution of this action. It is apparent from this testimony that Suttle exercised dominion over the automobile which was inconsistent with the rights of the true owner. (*Fitzgerald* v. *State,* 50 N. J. L. 475, 477, [14 Atl. 746]; *People* v. *Goodrich,* 142 Cal. 220, [75 Pac. 796].) **[7]** An action to recover under a policy of automobile insurance against theft is a civil action and plaintiff is required to prove his case only by a preponderance of the evidence, the rule being the same as it is in civil cases generally.

**[8]** The objection that the plaintiff should not have recovered the $126.26 paid to the detective agency in attempting to recover the automobile is met by the express terms of the policy that any act of the assured in recovering, saving, and preserving the property in case of loss or damage shall be considered as done for the benefit of all concerned and all reasonable expenses thus incurred shall constitute a claim under this policy. The portion of the contract contained in the letter of June 8th provides for the protection of plaintiff's equity in the car. **[9]** Plaintiff's equity in the car was the amount of the unpaid installments plus interest thereon; for the terms of the conditional contract of sale provided for the payment of interest upon all deferred payments from the date of the contract. Appellant may not, therefore, object to the allowance of such interest in the judgment.

The judgment is affirmed.

Brittain, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1920.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.