WHITTLESEY v. HERBRAND'CO.

1. CONTRACTS—WRITTEN CONTRACTS—CONSTRUCTION—INTENTION.
   Where one writing refers to another, the intention of the parties is to be gathered from the two instruments taken together.

2. SAME—EVIDENCE—ADMISSIBILITY.
   Where plaintiff secured from the L. Motor Co. orders for defendant to manufacture 46,000 exhaust forgings and 46,000 inlet forgings, and defendant agreed in writing to allow plaintiff a commission on "the order from the L. Motor Co. specifying 92,000 cylinder elbow exhaust forgings," or such part of the order as was completed, it was competent for plaintiff to show that the 92,000 exhaust forgings mentioned in the contract were intended to include the 46,000 order for inlet forgings, in an action on the contract for the commission agreed upon.

3. SAME—TRIAL—INSTRUCTIONS—QUESTION FOR JURY.
   Where most of the orders for exhaust forgings were canceled and the orders for inlet forgings increased accordingly, so that substantially 92,000 in all were taken, and there was evidence supporting plaintiff's claim that the substitutions were by agreement and in satisfaction and execution of the two original orders, while defendant claimed that the number of inlet forgings over and above the 46,000 were furnished under separate orders entirely independent of the two first given, the question was properly submitted to the jury under instructions that plaintiff's right of recovery was limited to a commission on the first orders or others substituted for them.

4. SAME—EVIDENCE—GREAT WEIGHT OF EVIDENCE.
   Verdict for plaintiff held, not against the great weight of the evidence.

Error to Wayne; Weimer (George V.), J., presiding. Submitted February 2, 1922. (Docket No. 4.) Decided March 30, 1922.

On admissibility of parol evidence to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

Assumpsit by Henry T. Whittlesey against the Herbrand Company for commissions on the sale of certain forgings. Judgment for plaintiff. Defendant brings error. Affirmed.

*Angell, Turner & Dyer,* for appellant.

*Stevenson, Carpenter, Butzel & Backus (William S. McDowell,* of counsel), for appellee.

SHARPE, J. Plaintiff, while in the employ of defendant, had solicited business from the Lincoln Motor Company. On October 3, 1917, the defendant received two orders direct from that company, one for "46,000 cylinder elbow *exhaust* forgings" and the other for "46,000 cylinder elbow *inlet* forgings." The price of each kind was the same. On November 16, 1917, defendant, by its sales manager, advised plaintiff by letter of its desire to terminate his employment. In it defendant indicated a willingness to allow plaintiff a commission of 2½ per cent. on "the order from the Lincoln Motor Company specifying 92,000 cylinder elbow *exhaust* forgings * * * providing we retain order for the entire amount." This proposition was accepted by plaintiff and on December 5, 1917, the agreement thus reached was reduced to writing. As a consideration for the termination of the contract of service by plaintiff, it provided:

"Inasmuch as second party now has a tentative order from the Lincoln Motor Company, of Detroit, Michigan, for 92,000 cylinder elbow *exhaust* forgings, the said order having been secured through the efforts of the said first party, second party agrees to pay first party commission on the said order at the rate of 2½ per cent. the said commission to be paid at said rate upon any part or all of said contract completed by said second party. Second party agrees to pay first party said commission upon all amounts received by it from said, the Lincoln Motor Company, in payment for goods furnished under and by virtue of the said

order, within thirty days from the date of the receipt of the said amounts."

It does not appear that either plaintiff or defendant's vice-president, who signed the contract, had at that time any information relative to the Lincoln Motor Company orders, other than what was revealed in the letter of the sales manager.

Plaintiff, alleging performance on the part of the Lincoln Motor Company, here sues to recover the commission agreed upon. To prove deliveries under the order mentioned in the contract, he offered in evidence the Lincoln Motor Company order for "exhaust forgings." From this it appeared that but 46,000 such forgings were ordered. Counsel for defendant insist that the matter must rest there; that any proof that the 92,000 exhaust forgings mentioned in the contract were intended to include the 46,000 order for inlet forgings is inadmissible because it would vary and contradict the written contract. Counsel overlook a rule of law which seems well settled. It is thus stated in the early case of *Bronson* v. *Green*, Walk. Ch. 56, as follows:

"Where one writing refers to another, the intention of the parties is to be gathered from the two instruments taken together."

In *Rorabacher* v. *Lee*, 16 Mich. 169, suit was brought on a writing containing a promise to pay a certain sum "according to the conditions of a certain bond" executed by one Power to plaintiff. The bond referred to was held to be admissible in evidence for the reason that—

"by this reference it became an essential part of the defendant's contract (upon which the suit was brought), without which the meaning and effect of the proviso in that contract could not be understood."

The rule is thus stated in 4 Page on Contracts, § 2044:

"Since a contract must be construed as a whole, effect must be given to writings incorporated in the contract by reference. * * * The parties may if they choose adopt an existing contract in writing by an express reference thereto. If a contract by which A agrees to sell to B a part of A's rights under A's contract with C, and the contract with A and B refers in express terms to the contract between A and C, both of such contracts must be construed together."

Mr. Elliott in his work on Contracts, § 1645, says:

"Where a writing refers to something that may be either a conversation or another writing, evidence is admissible, in a proper case, to show which it is, and, if a writing, to identify and connect it with the writing already in evidence so as to permit it also to be introduced. Where the instruments so connected and read together constitute a complete and unambiguous contract, they must speak for themselves; but, on the other hand, parol evidence may be admissible to explain an ambiguity caused by inconsistent statements in them or to supply omissions apparent on their face when read together."

In *Short* v. *Van Dyke,* 50 Minn. 286 (52 N. W. 643), it was said:

"In a written contract, a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract. But if the reference be made for a particular purpose, expressed in the contract, it becomes part of it only for that purpose."

The syllabus in *Cary* v. *Holt's Executors,* 120 Va. 261 (91 S. E. 188), reads:

"Where a contract refers to prior contracts, to which one of the parties was a party, for further particulars, it must be construed with reference to such prior contracts."

And that in *Adams* v. *Hill,* 16 Me. 215:

"Where a contract has reference to another paper

for its terms, the effect is the same as if the words of the paper referred to were inserted in the contract."

See, also, 13 C. J. p. 531; 17 Cyc. p. 671; *Donlon Bros.* v. *Southern Pacific Co.*, 151 Cal. 763 (91 Pac. 603, 11 L. R. A. [N. S.] 811, 12 Ann. Cas. 1118); *Conner* v. *Assurance Co.*, 65 C. C. A. 127, 130 Fed. 743 (70 L. R. A. 106). In a note to the latter the annotator says:

"The decisions are unanimous that, in the absence of fraud, or circumstances savoring of fraud, one entering into a contract which refers for some of its terms to an extraneous document, outside of the contract proper, is bound, also, thereby."

We have, then, the contract as written providing for commission on 92,000 exhaust forgings while the order therefor, which under the rule above stated is treated as a part of the contract with the same effect as if written in it, calls for 46,000 exhaust forgings only. How may this patent ambiguity be explained? Clearly, plaintiff may introduce the letter of the sales manager of November 26th and such parol proof as is necessary to show that the 92,000 forgings mentioned in the contract were intended to include the order for 46,000 inlet forgings as well as that for the same number of exhaust forgings.

It appears that from time to time the Lincoln Motor Company canceled most of the orders for exhaust forgings and increased correspondingly the order for inlet forgings so that substantially 92,000 in all were taken. There is evidence that this was in pursuance of an agreement between defendant and the Lincoln Motor Company and in satisfaction and execution of the two original orders. It was defendant's claim that the number of inlet forgings over and above the 46,000 were furnished under separate orders, entirely independent of the two first given. This question was submitted to the jury under specific instructions

of the trial court that plaintiff's right of recovery was limited to a commission on the price of the forgings furnished under the orders of October 3d or others substituted for them by agreement. The jury found in plaintiff's favor. We cannot say as a matter of law that the verdict is against the great weight of the evidence.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.