*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BUTROSS DAWOOD FASHHO,

Plaintiff-Appellant,

v

LIBERTY MUTUAL INSURANCE COMPANY,

Defendant-Appellee.

FOR PUBLICATION
September 17, 2020
9:00 a.m.

No. 349519
Macomb Circuit Court
LC No. 2018-000408-NF

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's opinion and order granting summary disposition to defendant. We affirm.

## I. BACKGROUND

Plaintiff was injured in a motor-vehicle accident on July 27, 2017. Plaintiff sought personal protection insurance (PIP) benefits, including wage-loss benefits, from defendant, his no-fault insurer. Defendant initially paid plaintiff's PIP benefits, but, at some point in late 2017, it decided to review whether plaintiff's continued claim for PIP benefits was warranted. As part of its review, defendant had plaintiff surveilled. The surveillance showed plaintiff, the owner of an automotive-repair shop with a tire-shredding facility in the back, working at his business without any apparent restrictions—he was loading and unloading tires from his work van, carrying around heavy tools and parts related to his business, pushing vehicles, and driving to customers' homes to perform vehicle repairs. Because of what defendant saw during its surveillance, it terminated plaintiff's PIP benefits in January 2018.

Plaintiff thereafter filed suit to recover payment of PIP benefits. During discovery, plaintiff testified that for several months after the accident, he could not perform his regular duties at his business, and that, at the time of his deposition, he was still unable to perform most of those duties.

Defendant moved for summary disposition, asserting that plaintiff's PIP claim was barred by virtue of the fraud exclusion in the parties' contract. In support of its assertion, defendant pointed to plaintiff's testimony and the contradictory surveillance evidence. In response, plaintiff

-1-

argued that his policy did not contain a fraud exclusion, and that even if it did, the evidence only created a question of fact whether he made material misrepresentations intended to defraud defendant.

The trial court eventually granted defendant's motion for summary disposition in a written opinion. The trial court explained that plaintiff's statements to defendant were material and false as demonstrated by the surveillance evidence that contradicted his testimony, that he knew his statements were false, and that they were made intending for defendant to rely on them.

## II. STANDARD OF REVIEW

Defendant moved for summary disposition under MCR 2.116(C)(8) and (10), but because the trial court relied on evidence not included in the pleadings, "we treat this as a grant of summary disposition pursuant to only MCR 2.116(C)(10)." *Attorney General v Flint City Council*, 269 Mich App 209, 211; 713 NW2d 782 (2005). Our Supreme Court explained the process for reviewing a motion filed under MCR 2.116(C)(10) as follows:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleading, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (citations and quotation marks omitted).]

## III. FRAUD EXCLUSION

We first address plaintiff's argument that his policy with defendant did not contain a fraud exclusion. "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). Courts must therefore "construe and apply unambiguous contract provision as written." *Id*. When interpreting contracts, words are given their "plain and ordinary meaning." *Id*. at 464.

In his response to defendant's motion for summary disposition, plaintiff attached a copy of his policy renewal and policy declarations and claimed that these documents represented his true policy with defendant. Because there was "no reference whatsoever to a fraud exclusion" in these documents, plaintiff concluded that the policy did not have a fraud exclusion. Yet a cursory review of these documents demonstrates that plaintiff's argument is meritless. The declarations page states, "The following forms and endorsements are applicable to your policy: Amendment of Policy Provisions – Michigan AS 2281 05 16 . . ." And the document titled "AS 2281 05 16" (which defendant provided to the trial court) states:

FRAUD

This policy was issued in reliance upon the information provided on your application. Any changes we make at your request to this policy after inception

will be made in reliance upon information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

Almost 100 years ago, our Supreme Court explained, "'In a written contract a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract." *Whittlesey v Herbrand Co*, 217 Mich 625, 628; 187 NW 279 (1922) (quotation marks and citation omitted). See also *Forge v Smith*, 458 Mich 198, 207; 580 NW2d 876 (1998) ("Where one writing references another instrument for additional contract terms, the two writings should be read together."). Because the document that plaintiff provided to the trial court unambiguously states that the terms of "AS 2281 05 16" are part of the parties' agreement, the two writings are read together. And because AS 2281 05 16 includes a fraud exclusion, even the document that plaintiff provided to the trial court supports defendant's position that plaintiff's policy with defendant includes a fraud provision. Plaintiff's argument to the contrary is meritless.

IV. SUMMARY DISPOSITION

The trial court granted summary disposition to defendant because it concluded that defendant could deny coverage to plaintiff pursuant to the policy's fraud exclusion based on plaintiff's fraudulent statements to defendant. In *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014), this Court held that to deny coverage because

the insured has willfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [Quotation marks and citation omitted.]

"A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Id*. at 425 (quotation marks and citation omitted).[1]

After the trial court granted summary disposition to defendant, this Court issued *Haydaw v Farm Bureau Ins Co*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 345516). In *Haydaw*, this Court held that a defendant-insurer could not deny a plaintiff-insured's request for benefits based on fraudulent statements made after litigation between the parties commenced. *Id* at ___ (slip op at 4). Because the trial court in this case relied extensively on plaintiff's deposition testimony when granting defendant's dispositive motion, we ordered supplemental briefing from the parties to address *Haydaw*.[2]

Having reviewed the parties' supplemental briefs, we conclude that *Haydaw* has no impact on the outcome of this case. We read *Haydaw* as standing for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the legal proceedings. This recognizes the reality that a plaintiff-insured only commences suit after the defendant-insurer denies the plaintiff's claim, and that denial cannot possibly be based on an event that has not yet taken place. This does not mean that a defendant cannot rely on evidence of fraud obtained after litigation commences. It simply means that the evidence must relate to fraud that took place before the proceedings began.

With this understanding of *Haydaw*, we now review the evidence in this case. Before litigation, plaintiff claimed wage-loss benefits of $800 per week. After defendant had plaintiff surveilled and saw plaintiff working his old job at his shop, defendant denied plaintiff's wage-loss claim. During plaintiff's deposition, he explained that before the accident, he paid himself a wage of $800 per week, and that after the accident, he stopped paying himself wages because he was unable to do the same job he was doing before the accident. Defendant had plaintiff expand on this, and plaintiff explained that before the accident, he was responsible for working on cars, changing tires, picking up tires from other automotive businesses for disposal, loading and unloading trucks, picking up automotive parts from various stores, traveling to and from the junkyard, carrying various tools related to his auto-repair business, and assisting customers. Plaintiff explained that when he returned to work after the accident, he was unable to do most of those things; he just focused on "dealing with customers" and "his managerial functions." He said that he "absolutely [could] not" do any of the labor-intensive positions previously required of him. He admitted, however, that he "could probably pick up a tire and move it," and had indeed lifted a tire "once" because the shop was "really busy."

Defendant's surveillance of plaintiff through the fall and winter of 2017 told a different story, however. That surveillance showed that plaintiff was capable of performing many if not all of the tasks he claimed he could not. Several surveillance photographs show plaintiff carrying

---

[1] In *Meemic Ins Co v Fortson*, ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 158302, p 12 n 10), our Supreme Court reaffirmed that "[a]n insurer can reject fraudulent claims without rescinding the entire policy."

[2] *Fashho v Liberty Mutual Insurance, Co*, unpublished order of the Court of Appeals, entered August 14, 2020 (Docket No. 349519).

tires and various tools, including a large tank, to and from his vehicle in October and December 2017. Photos also show plaintiff pushing vehicles around his shop's lot. In the surveillance report, the investigator described plaintiff's conduct related to lifting objects, like how he carried tires and rims, automotive parts, air tanks, a floor jack, a sledge hammer, and other tools. The report also described plaintiff's trips to a residence to repair a tire, describing how he left his auto-repair shop "carrying an air reservoir/tank and two jugs," loaded them into his van, drove to the customer's home, unloaded the tank, inflated the tire of the customer's vehicle, carried the tank back to the vehicle, and left. Plaintiff then returned to his repair shop, loaded a floor jack, power tool, and sledge hammer into his vehicle, and returned to the customer's residence, where he carried each of those tools to the customer's car, using the floor jack to "jack[] up the vehicle," and removed the vehicle's tire. According to the report, plaintiff returned to his shop with the tire, then departed once again to the residence, where he "rolled the tire to the" customer's car, "mounted the tire on the vehicle," pulled the floor jack to his van, loaded it into the van, and returned to his repair shop.

The evidence defendant presented established that plaintiff's representation about his need for wage-loss benefits because he could not perform all of his job functions after the accident was untrue. Plaintiff claimed that he could not pay himself the $800 per week after the accident like he had before the accident—and therefore required wage-loss benefits—because he could perform only the managerial aspects of his job and not the heavy-lifting aspects. But defendant's surveillance of plaintiff showed that plaintiff could, and in fact did, perform the heavy-lifting aspects of his job.

Unlike in *Haydaw*, plaintiff's representation that he needed wage-loss benefits because he could not perform all of his job functions after the accident was made before litigation commenced, and defendant rejected plaintiff's claim for benefits on the basis of the surveillance evidence it obtained before litigation showing plaintiff's representation to be untrue. While plaintiff made false statements after litigation commenced, defendant did not deny plaintiff's claim for wage-loss benefits because of those statements. Instead, plaintiff's false statements made after litigation began, about why he could not do his old job and required wage-loss benefits, only reaffirmed defendant's initial determination that plaintiff made a misrepresentation about needing wage-loss benefits. Thus, *Haydaw* does not control this case, and the trial court correctly determined that reasonable minds could not differ with regard to the fact that plaintiff had made misrepresentations about his need for wage-loss benefits.

This misrepresentation was material because it was reasonably relevant to defendant's investigation of plaintiff's claim for benefits. See *Bahri*, 308 Mich App at 425. Reasonable minds could not differ with regard to the fact that plaintiff knew that his representation was false, or made it without knowledge of its truth, because he was the one performing the same functions of his job that he did before the accident while claiming a need for wage-loss benefits. Lastly, reasonable minds could only conclude that plaintiff made the misrepresentation with the intent that defendant pay him wage-loss benefits.

In sum, because reasonable minds could not disagree that defendant established all of the elements in *Bahri*, 308 Mich App at 424-425, defendant had the contractual right to deny coverage

on plaintiff's claim based on plaintiff's misrepresentations pursuant to the fraud exclusion in plaintiff's policy. The trial court did not err by granting summary disposition to defendant.[3]

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

[3] The trial court initially denied defendant's motion for summary disposition, but ultimately granted it after defendant moved for reconsideration. On appeal, plaintiff challenges this decision, arguing that the trial court should not have granted defendant's motion for reconsideration because it simply repeated the arguments from defendant's original motion. In *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012), we explained that when a party files for reconsideration, the trial court "has the discretion to give a litigant a 'second chance' even if the motion for reconsideration presents nothing new." Thus, the trial court's decision here was not improper.